IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TARA NICOLE SLOAN                                                          PLAINTIFF

V.                                                      CIVIL ACTION NO. 1:10CV325-B-S

MONROE COUNTY SHERIFF'S DEPARTMENT                              DEFENDANT

## MEMORANDUM OPINION

This cause comes before the court upon the defendant's motion for summary judgment.

Upon due consideration of the motion, response, exhibits, and supporting and opposing

authority, the court is ready to rule.

### Factual and Procedural Background

The plaintiff, Tara Nicole Sloan, brings this action pursuant to 42 U.S.C. § 1983 and Title

VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17, alleging that her former

employer, defendant Monroe County Sheriff's Department, discriminated against her on the

basis of her gender when it failed to promote her from a correctional officer to a road deputy.

She further asserts that her employment was terminated in retaliation for her opposing this

alleged gender discrimination.

On June 2, 2009, the plaintiff was hired as a correctional officer by then Monroe County

Sheriff Andy Hood.  Prior to working with the defendant, the plaintiff had worked from January

2005 until April 2008 for the Verona, Mississippi Police Department.  On her application with

the defendant, dated November 19, 2008, the plaintiff stated that she would discuss her reason

for leaving Verona at her interview.  During the plaintiff's interview, Sheriff Hood inquired

about the reason the plaintiff was discharged from her position with Verona.  The defendant

asserts that the plaintiff answered that she was terminated because Verona did not have an

investigator's position.  The plaintiff asserts that she truthfully divulged the reasons for her firing.

After she was hired by the defendant, the plaintiff, with the assistance of Donna Lucas, the administrative assistant at the Monroe County Sheriff's Department, prepared separate sworn documents to send to the Mississippi Department of Public Safety's Peace Officer Standards & Training division to obtain originals of the plaintiff's law enforcement certifications.  As part of this application process, on June 10, 2009, the plaintiff responded affirmatively to a question asking whether she had ever been terminated from another job.  The application directed that she provide an explanation for any affirmative response, to which the plaintiff answered:

> I was terminated from Verona Police Department because the chief asked me to investigate a complaint that a citizen was having involving two officers who worked also at Verona Police Department.  The Board of Alderman [sic] stated that Verona didn't have an investigator and that I shouldn't have taken the statement even though Chief Barnett who was my boss told me to.

On July 12, 2009, on a similar certification application, the plaintiff stated:

> On April 8, 2008, I was terminated from Verona Police Department because the chief told me to take a statement from a concerned citizen.  The Board of Alderman [sic] stated Verona did not have an investigator.  I was later terminated.

At one point during her deposition, the plaintiff stated that she was not certain of the reasons that she was fired from Verona but then acknowledged that she was present at a board meeting in which a witness stated to the board that the plaintiff "made her make a complaint," apparently involving Verona's mayor and other Verona police officers.  The plaintiff testified that she was allowed to respond to this witness at the board meeting and stated to the board that the then Verona Police Chief Chris Barnett had instructed her to take a statement from the witness. Barnett was dismissed from his job with Verona shortly before the plaintiff was dismissed.

2

The plaintiff advised Sheriff Hood during her interview that she was ultimately interested in a road deputy position. The defendant followed a seniority policy for promotions. In late 2009, two road deputy positions became available. Upon hearing of these openings, the plaintiff contacted Chief Deputy Brent Swan and inquired about being promoted to one of the positions. The plaintiff testified in her deposition that Swan told her that the defendant was "not going to hire any females because of what has happened in the past." The plaintiff further testified as follows:

> And I said, well, what do females have to do in order to get on the road? And then he said, I don't know. I said, well, that's not what Andy told me in the – in my interview. He said, well, call Andy. So I hung up the phone with him and I called Andy on the phone, and I spoke with Andy.

The plaintiff testified that in her conversation with Sheriff Hood, she "told him that I heard he had some positions available and I was asking could I get one and then he said that whoever's been there the longest gets first – gets to go first." Counsel then asked the plaintiff, "Anything else you remember the sheriff saying?" The plaintiff responded, "No, sir. I said – I said, okay, thank you." The plaintiff bases her claim of retaliation for opposing alleged gender discrimination on these conversations with Sheriff Hood and Chief Deputy Swan. The plaintiff asserts she also discussed the matter with other officers, but there is no indication that these officers advised Sheriff Hood of the conversations. Chief Deputy Swan does acknowledge, however, that he informed the sheriff of his conversation with the plaintiff.

The plaintiff further alleges that Assistant Jail Administrator Johnny Buckingham informed her that to be a road deputy, she would first have to be a transport officer. She contends that Jail Administrator Danny Starks then told her that women could not be transport officers because of safety concerns.

3

The sheriff ultimately filled the available road deputy positions by promoting officers Jeremy Roberts and Trent Ward. It is uncontested that both Roberts and Ward had seniority over the plaintiff, who had only been employed by the defendant approximately six months at the time of the promotions.

On January 8, 2010, the sheriff's administrative assistant Donna Lucas provided the sheriff with information that four employees, including the plaintiff, had falsified time records by taking "comp time" that they had not earned. In response, the sheriff gave each employee a warning notice. On that same day, Sheriff Hood received a phone call and facsimile transmission from the Mississippi Peace Officer Standards & Training Office regarding certain issues with the plaintiff's certification. Among other things, the documentation showed that the plaintiff was dismissed from her job at Verona for "conduct or action that would breach the established minimum standards and greatly diminish the public trust in the competence and reliability of a law enforcement officer [and that] would be actionable as due cause to cancel and recall a certification." The documents also included a statement that "Tara Sloan was terminated from the Verona Police Department for conduct unbecoming to an officer, and as part of said conduct did threaten, intimidate and coerce a witness."

The defendant asserts that the plaintiff did not provide complete and accurate information about her termination from Verona and that this fact did not come to light until this documentation was received from the Standards & Training Office. The sheriff decided to discharge the plaintiff on January 8, 2010, because of this information and her falsification of time records. The sheriff gave the plaintiff the opportunity to voluntarily resign when he confronted her with this information, and she did so.

4

The plaintiff filed the present action on December 13, 2010, asserting claims of gender discrimination for the defendant's failure to promote her to the position of road deputy and wrongful termination in retaliation for opposing gender discrimination. The defendant has moved for summary judgment.

<u>Standard of Review</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of

law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## Analysis

*Title VII Gender Discrimination Claim*

In the absence of direct evidence of discrimination, a plaintiff's Title VII claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Under the framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating the following:

> (1) that the employee is a member of a protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the

6

> employer continued to seek or promoted applicants with the plaintiff's qualifications.

*Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Once the plaintiff has established a prima facie case, "an inference of intentional discrimination is raised, and the burden of production shifts to the employer, who must offer an alternative nondiscriminatory explanation for the adverse employment action." *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If the defendant can set forth a legitimate nondiscriminatory reason for its action, the burden then shifts back to the plaintiff who must show at "a new level of specificity" that the explanation is merely a pretext for discrimination. *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993). In the alternative, the plaintiff may show "that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611 (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). *See also* 42 U.S.C. § 2000e-2(m). If the plaintiff proceeds under the second option and successfully proves that her gender played a motivating part in the employment action, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003).

Notwithstanding the shifting of "intermediate evidentiary burdens" under *McDonnell Douglas*, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The *McDonnell Douglas* division of intermediate

evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Id.*

The defendant does not concede that the plaintiff has established a prima facie case of discrimination because it asserts that she has failed to show that someone with similar qualifications was treated more favorably. It is uncontested that the deputies promoted for the road position had seniority over the plaintiff, who had only been employed by the defendant for approximately six months at the time of the promotions. Assuming arguendo, however, that the plaintiff has met the low threshold required for a prima facie showing, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its failure to promote the plaintiff to a road deputy's position. The defendant's proffered reasons for failing to promote the plaintiff are the sheriff's policy of promoting strictly based on seniority and that the two males promoted had seniority over the plaintiff. The plaintiff concedes that the defendant has articulated a nondiscriminatory reason and acknowledges that "the burden is now on Plaintiff to prove either that (1) the reasons given were pretextual; or (2) that gender discrimination is the more likely reason."

The plaintiff argues that her allegedly superior qualifications, the alleged discriminatory comments made by other officers, and the defendant's lack of female deputies create questions of fact that the defendant's proffered reason is pretextual thereby precluding summary judgment. The court is unpersuaded by the plaintiff's qualifications argument, particularly in light of the sheriff's consistent adherence to his policy of promoting based on seniority. The court is likewise unpersuaded by the plaintiff's argument regarding the lack of female deputies considering that the defendant has presented evidence to the contrary which the plaintiff has not

8

successfully rebutted. The court is, however, persuaded that the plaintiff's allegations of discriminatory comments preclude summary judgment on the plaintiff's gender discrimination claim.

The plaintiff contends that Jail Administrator Danny Starks told her that women could not be transport officers because of safety concerns and that Deputy Chief Brent Swan told her that the defendant was "not going to hire any females because of what has happened in the past." In an age discrimination context, the Fifth Circuit has stated that discriminatory "remarks are appropriately taken into account when analyzing the evidence supporting the jury's verdict, even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palosata v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003). In the present case, it is uncontested that the jail administrator recommended the two males who were promoted over the plaintiff;[1] thus, at the very least, there is a question as to whether Starks was in a position to influence the sheriff's decision. Further, both Starks and Swan appear to be upper level managerial employees. There is also, however, a question as to whether these comments were even made, as the individuals deny making them. The court is not allowed to make credibility determinations, as that is strictly a function of the jury, and this issue cannot be resolved without doing so. The court, therefore, finds that the defendant's motion for summary judgment should be denied as to the plaintiff's gender discrimination claim.

---

[1]The defendant asserts in its motion that "Sheriff Hood talked with Jail Administrator Starks about Roberts and Ward, and Starks believed that both would be good road deputies."

9

*Title VII Retaliation Claim*

"The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims brought under a pretext theory." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). To establish a prima face case of Title VII retaliation, the plaintiff must show "1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Id.* at 610. A plaintiff has engaged in protected activity if she either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) if she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

The court finds that the defendant is entitled to summary judgment on the plaintiff's Title VII retaliation claim because the plaintiff has failed to direct the court to evidence that she engaged in protected activity as defined by the statute. The plaintiff testified that she asked Chief Deputy Swan about being a road deputy. She stated,

> And I said, well, what do females have to do in order to get on the road? And then he said, I don't know. I said, well, that's not what Andy told me in the – in my interview. He said, well, call Andy. So I hung up the phone with him and I called Andy on the phone, and I spoke with Andy.

The plaintiff then contacted Sheriff Hood. She testified that she "told him that I heard he had some positions available and I was asking could I get one and then he said that whoever's been there the longest gets first – gets to go first." Counsel at the deposition then asked the plaintiff, "Anything else you remember the sheriff saying?" The plaintiff responded, "No, sir. I said – I said, okay, thank you." The plaintiff bases her claim of retaliation for opposing alleged gender discrimination on these conversations with Sheriff Hood and Chief Deputy Swan. The plaintiff

10

asserts that she also discussed the matter with other officers, but there is no indication that the officers advised Sheriff Hood of these alleged conversations. Chief Deputy Swan does acknowledge, however, that he informed the sheriff of his conversation with the plaintiff. Neither of these conversations is evidence that the plaintiff "opposed" what she perceived to be gender discrimination with her employer. Because the plaintiff has not established a prima facie case,[2] the court finds that the plaintiff is entitled to summary judgment.

The court also finds that the defendant met its burden to establish a legitimate, non-discriminatory reason for the plaintiff's termination – that is, that the plaintiff was not forthcoming about the reasons for her termination with Verona, that the documents from the Standards & Training Office brought this matter to light, and that the defendant fired the plaintiff on the same day it received this documentation and on the same day the sheriff warned the plaintiff about falsifying time records. The plaintiff did not successfully direct the court to any evidence of pretext, and the court finds that the defendant would be entitled to summary judgment even if the plaintiff had established a prima facie case. Because she did not, however, the court need not delve into further analysis of the pretext argument.

## Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment should be granted as to the plaintiff's Title VII retaliation claim and denied as to the

---

[2]The court also finds no causal link between the plaintiff's alleged protected activity and the adverse employment action, but analysis of that element is unnecessary, as the plaintiff's failure to meet the protected activity element is dispositive.

plaintiff's Title VII gender discrimination claim.  A separate order in accord with this opinion shall issue this day.

     This, the 9th day of April, 2012.

                                      /s/ Neal Biggers
                                       **NEAL B. BIGGERS, JR.**
                                       **UNITED STATES DISTRICT JUDGE**